COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOHN CHARLES MARTIN, | § | |
| | | No. 08-07-00150-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 243rd District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20050D00853) |
| | § | |

**O P I N I O N**

This is an appeal from a jury conviction for the offense of robbery. The court assessed punishment at twenty years' imprisonment. We affirm.

**I. SUMMARY OF THE EVIDENCE**

David Montes testified that on November 29, 2004, he was assigned to work in loss prevention for the Cielo Vista Wal-Mart in El Paso, Texas. Montes stated that he was to watch for shoplifters, and then apprehend them after it was clear that they were not going to pay for the item or items they had taken. He was trained to stop a suspect in between two sets of entrance/exit doors prior to the individual exiting the store. This would be beyond the location of the electronic detection devices which would set off an alarm unless the corresponding electronic device on the merchandise had been removed. Montes related that the electronic device on the merchandise resembled a thin magnet, and shoplifters frequently cut off the device in order to exit the store without setting off an alarm.

Montes testified that on November 29, 2004, during the evening shift, he saw Appellant acting suspiciously while Appellant was situated between two shelves in the automotive aisle.

Montes was dressed in plain clothes. Montes approached and he saw that Appellant was cutting open the packaging of a portable DVD player with a knife. Montes saw Appellant select and cut open various other items.

Shortly thereafter, a woman approached Appellant, and he handed her some of the items. He concealed other items of merchandise in the waistband of his pants. After all the items were concealed, the two made their way toward one of the front entrances. Montes enlisted the aid of a store manager and a female employee to apprehend Appellant and his companion.

Montes related that he thought Appellant saw Montes's reflection in the door because Appellant began to walk more quickly. Appellant began taking quick steps to the extent he was almost running through the two doors leading outside. As they passed the sensor alarm device, Montes called out and identified himself as "Wal-Mart loss prevention." Montes testified that he was a few steps behind Appellant at that time, but there was noise in the area from the shopping carts, registers, and some vending machines. Due to the noise, he had tried to speak loudly and clearly. Later in his testimony, Montes stated that he was not sure if Appellant heard him. After he called out to Appellant, he grabbed him by the upper part of both arms. Montes told Appellant to stop resisting, but he moved his elbows and arms in an attempt to escape. As he tried to pull Appellant back into the store, they both fell to the ground about a foot outside the store.

Montes was aware Appellant had used a knife to open the packaging of the merchandise, so he tried to prevent Appellant from getting anything out of his pockets. Montes noticed that Appellant had his keys in his hand, but he was unaware that Appellant had any kind of mace device attached to the keys. As Montes tried to restrain Appellant, Appellant reached over and sprayed Montes on the left side of his face. This caused Montes pain and he hurt for several days thereafter. Montes could not see well due to the spraying. Some customers and other employees aided in

restraining Appellant. Montes did not know exactly what had been sprayed into his face, but he believed it was a chemical.

The manager whose aid Montes had enlisted earlier was not trained to apprehend shoplifters. Nevertheless, he assisted by blocking Appellant's escape by placing a shopping cart in front of Appellant. Montes eventually was able to handcuff Appellant, and a customer called 911. After Appellant was restrained, he continued to fight by kicking and throwing his elbows back. Police officers arrived and took custody of Appellant. They called an EMT unit to assist Montes in flushing the chemicals out of his eyes.

Montes testified that when he and Appellant fell to the ground, some of the stolen items fell out. After Appellant was apprehended, the manager who had assisted Montes went back to where the items were taken from, and he found most of the packaging.

David Gonzalez testified that he worked at Wal-Mart as a support manager. When Montes asked him to assist, he followed. As he was behind Montes, he did not see what happened; he then saw the two on the floor. He heard Montes scream, "Oh, my eye." Appellant stood up and sprayed Gonzalez on the arm with some substance. Gonzalez related that the substance smelled like onions or peppers. The witness stated that he pushed a shopping cart in front of Appellant to protect himself from what happened to Montes. As Appellant went out the door, four cart-pushers helped him get Appellant to the ground. Gonzalez saw a DVD player screen on the ground, and he picked it up. Montes then got up and handcuffed Appellant, and the police arrived. Gonzalez stated that after the incident, he saw Montes pacing and holding his face, with his hand over his eye. It appeared that the spraying caused Montes pain.

Jennifer Garcia testified that she was a department manager for the automotive section of the store. She had previously had the position of loss prevention officer. On that evening, Montes had

asked her for help as one of the suspects was a woman. She testified that it was obvious that she was a Wal-Mart employee as she was wearing a blue, Wal-Mart smock. She related that as Appellant left the store, Montes put a hand in front of him to get him to stop, and she saw him saying something to Appellant. He put his arms around Appellant in a bear hug, and they fell to the ground. She was observing both men from the back, and she saw Appellant turn his right shoulder toward Montes, and then she saw Montes jump up and start rubbing his face. She did not see what caused him to do this; although, she later stated that she smelled pepper spray. She was familiar with the odor of pepper spray from her experience in the automotive department due to dealing with damaged packages of pepper spray and customers testing out the product. She testified that pepper spray was a chemical.

After she saw Montes stand up and rub his face, she noticed that Appellant stood and turned towards David Gonzalez. She saw Appellant holding the can of spray, and spraying it towards Gonzalez. She saw a silly-string-type spray of mist coming out of the can. It did not appear to effect Gonzalez. Garcia saw Gonzalez use a shopping cart to keep Appellant from exiting the store. Nonetheless, Appellant was able to get outside. Montes and Gonzalez then struggled with Appellant outside the store.

Garcia detained Appellant's female accomplice, and both the accomplice and Appellant were taken to the loss-prevention room inside the store. She noticed that Montes's face was very red, and his eye was bloodshot and puffy. He kept trying to wipe the chemical off his face. Garcia gave him some water and he poured it over his face. The police called EMS. When they arrived, they gave him a type of squirt bottle to spray on his face.

On cross-examination, Garcia testified that it appeared that Appellant was going to run just prior to Montes putting his arm in front of Appellant. She did not see Appellant spray Montes, but

she did see him spray Gonzalez with the cannister. The substance smelled like the pepper spray sold in the automotive department. She thought it was the kind of item people buy for personal protection.

## II. DISCUSSION

In Appellant's sole issue on appeal, he contends that the evidence is legally insufficient to support the conviction. Specifically, he asserts that the State failed to prove that the device used to spray the complainant was a chemical dispensing device as defined in Section 46.01(14) of the Texas Penal Code. Furthermore, he maintains that there is a lack of nexus between the theft and the use of physical force.

In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). More particularly, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997).[1]

Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex.App.–El Paso 1992, pet. ref'd). We do not resolve any

---

[1] In this case, the application paragraph of the jury charge read:

> Now, if you believe from the evidence beyond a reasonable doubt that the defendant, JOHN MARTIN, did then and there in El Paso County, Texas, on or about November 29, 2004 while in the course of committing theft and with intent to obtain or maintain control of property, intentionally or knowingly or recklessly cause bodily injury to DAVID MONTES by spraying DAVID MONTES about the head with a substance from a chemical dispensing device, you will find the defendant guilty of robbery (Verdict Form G).
> If you do not so believe, or if you have reasonable doubt thereof, you will acquit the defendant of robbery under the indictment (Verdict Form NG).

conflict in fact, weigh any evidence or evaluate the credibility of any witnesses, and thus, the fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State*, 901 S.W.2d 640, 650-52 (Tex.App.–El Paso 1995, pet. ref'd); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); *Leyva v. State*, 840 S.W.2d 757, 759 (Tex.App.–El Paso 1992, pet. ref'd); *Bennett v. State*, 831 S.W.2d 20, 22 (Tex.App.–El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843 (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State,* 900 S.W.2d 886, 897 (Tex.App.–El Paso 1995, pet. ref'd).

Initially, Appellant argues that the evidence is insufficient because the State did not prove that the item alleged in the indictment was a chemical dispensing device as defined in Texas Penal Code Section 46.01(14).[2] However, a definition set out in Section 46.01 of the Penal Code is limited to the offenses set out in Chapter 46 of the Penal Code. *Ex parte Campbell*, 716 S.W.2d 523, 526 (Tex.Crim.App. 1986); *Garcia v. State*, 791 S.W.2d 279, 283 (Tex.App.–Corpus Christi 1990, pet.

---

[2] TEX.PENAL CODE ANN. § 46.01 (Vernon Supp. 2008) provides, in relevant part

CHAPTER 46. WEAPONS

In this chapter:

. . .

(14) "Chemical dispensing device" means a device, other than a small chemical dispenser sold commercially for personal protection, that is designed, made, or adapted for the purpose of dispensing a substance capable of causing an adverse psychological or physiological effect on a human being.

ref'd).  In alleging that a chemical dispensing device was used in the commission of an offense, the State need not prove that the chemical dispensing device meets the definition contained in Section 46.01(14) of the Penal Code unless the State is charging a defendant with an offense under Chapter 46.  *See Garcia*, 791 S.W.2d at 283 (definitions of firearm and handgun in murder case did not need to comport with definitions contained in Section 46.01 of the Penal Code).  In fact, Section 46.01, which is a definitions section, itself specifically states, "In this chapter . . . ."  TEX.PENAL CODE ANN. § 46.01 (Vernon Supp. 2008).  Appellant does not indicate any other manner that the State failed to prove that a chemical dispensing device was used in the commission of the offense, and the evidence does indicate that such a device was utilized.  Accordingly, we find Appellant's argument that the State failed to prove that the device used during the offense was a chemical dispensing device to be without merit.

Next, Appellant urges that the State failed to prove any nexus between the theft and the use of physical force.  Appellant cites *Lane v. State,* 763 S.W.2d 785, 786 (Tex.Crim.App. 1989) for the proposition that, "the violence used or threatened must be for the purpose of . . . preventing or overcoming resistance to the theft."  *Id.*  Appellant asserts that Montes never identified himself as an agent of Wal-Mart to Appellant; therefore, the bodily injury to Montes was not sufficiently linked to a theft, but was merely a self-defense response to Montes's physical force against Appellant.

With regard to the pertinent statutes, the Texas Penal Code provides:

A person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property.

TEX.PENAL CODE ANN. § 31.03(a)(Vernon Supp. 2008).

A person commits [robbery] if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: . . . causes bodily injury to another . . . .

TEX.PENAL CODE ANN. § 29.02(a)(1)(Vernon 2003).

Conduct occurring "[i]n the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX.PENAL CODE ANN. § 29.01(1)(Vernon 2003). Violence accompanying an escape immediately subsequent to a completed theft can constitute robbery. *See White v. State*, 671 S.W.2d 40, 42 (Tex.Crim.App. 1984). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX.PENAL CODE ANN. § 1.07(a)(8)(Vernon Supp. 2008). The issue of self-defense is one of fact to be determined by the jury. *See Yarborough v. State,* 178 S.W.3d 895, 904 (Tex.App.–Texarkana 2005, pet. ref'd). A jury's verdict of guilty is an implicit finding rejecting an asserted self-defense theory. *Id*. at 903. Further, any person has a right to prevent the consequences of theft by seizing any personal property that has been stolen and bringing it, along with the person suspected of committing the theft, if that person can be taken, before a magistrate for examination, or delivering the property and the person suspected of committing the theft to a peace officer for that purpose. TEX.CODE CRIM.PROC.ANN. art. 18.16 (Vernon 2005).

In the present case, David Montes testified that he observed Appellant leaving without paying for various items of merchandise. He stated that Appellant quickened his pace upon seeing Montes's reflection in a glass door. Montes identified himself loudly and clearly; albeit, the area was noisy. There is abundant testimony that Montes suffered bodily injury after having a chemical sprayed on him by Appellant. It was clearly within the jury's prerogative to determine that Appellant intended to inflict bodily injury in the course of committing theft, and he was not acting in self-defense. Viewing the evidence in the light most favorable to the verdict, we find that there is sufficient evidence to support the conviction. Appellant's sole issue is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.

GUADALUPE RIVERA, Justice

June 17, 2009

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)